**REESE LLP**
Michael R. Reese (SBN 206773)
*mreese@reesellp.com*
George V. Granade (SBN 316050)
*ggranade@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500

**LEVIN, PAPANTONIO, THOMAS, MITCHELL, RAFFERTY & PROCTOR, P.A.**
Matthew D. Schultz
*mschultz@levinlaw.com*
316 South Baylen Street, Suite 600
Pensacola, Florida 32502-5996
Telephone: (850) 435-7140

**HALUNEN LAW**
Melissa Weiner
*Weiner@halunenlaw.com*
80 S 8th Street -1650 IDS Center
Minneapolis, Minneapolis 55402
Telephone: (612) 605-4098

*Counsel for Plaintiff and the Proposed Class*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RACHEL STOVER, on behalf of herself and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>EXPERIAN HOLDINGS, INC.; EXPERIAN INFORMATION SOLUTIONS, INC.; and CONSUMERINFO.COM, INC. dba EXPERIAN SERVICES<br><br>Defendants. | Case No. _____<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL REQUESTED |

Class Action Complaint

Plaintiff Rachel Stover ("Plaintiff"), on behalf of herself and all others similarly situated, by and through her undersigned counsel, alleges the following, based upon her personal knowledge and the investigation of her counsel. Plaintiff believes substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## SUBSTANTIVE ALLEGATIONS

1. This is a proposed class action against Experian Holdings, Inc.; Experian Information Solutions, Inc.; and (together, "Experian" or "Defendants") for:

   a. charging consumers for inaccurate credit scores (the "Experian Credit Scores") that Experian did not derive from a credit scoring model that Experian widely distributes to lenders but instead is based on a vastly inferior and inaccurate model that is essentially useless to consumers; and

   b. misleading consumers concerning the Experian Credit Scores by failing to prominently and clearly inform the consumers that Defendants generated the Experian Credit Scores using a significantly different (and greatly inferior) credit scoring system than that used to give credit scores to lenders.

2. To entice Plaintiff and other consumers to acquire credit scores from it, Experian conveyed to consumers through its websites in which consumers purchased the Experian Credit Scores that the Experian Credit Scores were accurate, reliable, and widely used and were the same credit scores relied upon by lenders. Unfortunately for consumers, this was untrue.

3. For example, Experian stated that "Lenders review your credit information and so should you. Check your credit score to know what to expect – including what factors may be affecting your credit. Another stated: "See the same type of information lenders see when assessing your credit"

4. These representations appeared to Plaintiff and other consumers during

the Class Period, and Plaintiff and other consumers relied upon these representations to believe that the credit score they were receiving was the same credit score provided to and used by lenders.

5. In truth, the Experian Credit Scores that Experian sold to consumers are not the credit scores used by the vast majority of lenders. Indeed, Experian did not generate the Experian Credit Scores using the credit scoring models that account for 90% of the market of scores sold to firms to use when making lending decisions (i.e., FICO credit scoring models). Instead, Experian generated the Experian Credit Scores using a credit scoring model that is not widely distributed to lenders, and, as a result, is vastly inferior, inaccurate and of little value to consumers.

6. Experian is well aware of the confusion that it creates. The U.S. Consumer Financial Protection Bureau ("CFPB") has taken action against Experian "for deceiving consumers about the usefulness" of the Experian Credit Scores. U.S. CONSUMER FIN. PROT. BUREAU, Experian Holdings, Inc.; Experian Information Solutions, Inc.; and ConsumerInfo.com, Inc. (dba Experian Services), WWW.CONSUMERFINANCE.GOV (last updated March 23, 2017), https://files.consumerfinance.gov/f/documents/201703_cfpb_Experian-Holdings-Inc-consent-order.pdf. A copy of the CFPB Consent Order against is attached hereto as Exhibit A. On March 23, 2017, the CFPB entered into a Consent Order with Experian which required Experian to pay more than $3.0 million civil penalty to the CFPB. *Id.* In the Consent Order, the CFPB found and concluded that:

> 23. Experian represented, directly or indirectly, expressly or impliedly, that the credit scores it marketed, offered, and provided to consumes were the same scores used by lenders or other commercial users for credit decisions.
>
> 24. In fact, the credit scores Experian marketed, offered, and provided to consumers were not the same scores used by lenders or other commercial users for credit decisions.

CLASS ACTION COMPLAINT
- 2 -

> 25. Thus, Experian's representations, as described [above], were false or misleading and constituted deceptive acts or practices…

7. As a result of the significant difference between the Experian Credit Scores that Experian sells to consumers, and the credit scores provided to the vast majority of lenders, the Experian Credit Scores did not meaningfully assist consumers in understanding how lenders would assess their creditworthiness or how lenders would make predictions about the consumers' future credit behavior, which is the very reason that Plaintiff and other consumers bought the Experian Credit Scores in the first place.

8. During the period from May 11, 2010 to the present, Defendants marketed the Experian Credit Scores in a manner that misled consumers, by concealing from the consumers that Experian generated the Experian Credit Scores using a credit scoring system that substantially differs (and is vastly inferior) from the credit scoring system United States lenders routinely use in connection with lending decisions.

9. In connection with Defendants' sale of the Experian Credit Scores to consumers, Defendants failed to prominently and clearly disclose that they generated the Experian Credit Scores using a substantially different (and greatly inferior) credit scoring system than United States lenders routinely use in connection with lending decisions.

10. Defendants knew that the majority of reasonable consumers do not realize that multiple credit scoring systems exist.

## THE PARTIES

**Plaintiff**

11. Plaintiff Rachel Stover is a resident of Land O'Lakes, Florida, and she has no intention of changing her residence.

12. During the Class Period, Plaintiff purchased one or more Experian Credit

Scores, including an Experian Credit Score on or about June 17, 2014.

13. Plaintiff and other consumers made the decision to acquire the Experian Credit Score based upon the representations that the Experian Credit Scores were those used by lenders.

14. Experian injured Plaintiff in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), by providing her inaccurate Experian Credit Scores in that they were not "derived from a credit scoring model that is widely distributed to [lenders] by [Experian] in connection with residential real property loans" and that did not "assist[] [Plaintiff] in understanding the credit scoring assessment of [Plaintiff's] credit behavior . . . and predictions about [Plaintiff's] future credit behavior . . . ." 15 U.S.C. § 1681g(f)(7)(A).

15. Experian also injured Plaintiff in violation of state consumer protection laws by providing marketing and selling her Experian Credit Scores using the materially misleading representations set forth above. Experian's representations were materially misleading because, among other reasons, they failed to disclose prominently and clearly to Plaintiff that the Experian Credit Scores were not generated using the same credit scoring system routinely used by United States lenders when making lending decisions.

16. Furthermore, the Experian Credit Scores contained misleading information about Plaintiff, in violation of state consumer protection laws, because they did not contain Plaintiff's credit score as used by United States lenders, but instead contained another number (concerning Plaintiff) that was different from the credit score used by United States lenders—a number that was useless to Plaintiff.

17. Furthermore, Experian injured Plaintiff in violation of state consumer protection laws by concealing material characteristics of the Experian Credit Scores from her in connection with Experian's marketing and sale of the Experian Credit Scores to Plaintiff.

18. Like most consumers, Plaintiff believed the credit scoring system used to

generate the Experian Credit Scores she purchased was the same as the credit scoring system that lenders routinely use in connection with evaluating creditworthiness. In truth, it was not.

19. Unfortunately for Plaintiff, the credit score that Experian sold to her is not based on an accurate or otherwise standard credit scoring system used in the vast majority of lending decisions in the United States. Consequently, the credit score that Experian sold to Plaintiff was essentially worthless to Plaintiff.

20. Had Plaintiff known about the significant differences between the Experian Credit Scores she purchased and the credit score lenders routinely use, she would not have paid money to Experian for the Experian Credit Scores.

21. On May 10, 2018, Plaintiff accessed Defendants' website.

**Defendants**

22. Defendant Experian Holding Inc. is a privately held corporation with its headquarters in Costa Mesa, California.

23. Defendant Experian Information Solutions, Inc. is a wholly-owned subsidiary of Experian Holding Inc. and has its headquarters in Costa Mesa, California.

24. Defendant ConsumerInfo.com, Inc. (dba Experian Services) is a wholly-owned subsidiary of Experian Holding Inc. and has its headquarters in Costa Mesa, California.

**JURISDICTION AND VENUE**

25. This Court has personal jurisdiction over Defendants for reasons including but not limited to the following:

26. This Court has original subject-matter jurisdiction over this proposed class action pursuant to the Class Action Fairness Act of 2005, Pub. L. 109-2, 119 Stat. 4, under 28 U.S.C. § 1332(d), which explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State

different from the State of citizenship of any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs. Plaintiff alleges that there are at least 100 members in the proposed plaintiff class and that the matter in controversy is well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

27. This Court also has original subject-matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1331 because the action arises under federal law, namely, the FCRA.

28. Venue is proper in this District pursuant to 28 U.S.C. § 1391 as Defendants do business in this District.

## CLASS ALLEGATIONS

29. The classes are defined as follows:
   a. The "Nationwide Class," which consists of: All persons in the United States who at any time acquired Experian Credit Scores.
   b. The "Florida Class," which consists of: All persons in the Florida who at any time acquired Experian Credit Scores.
(collectively, the "Class")

30. Excluded from the class are: (a) Defendants, Defendants' board members, executive-level officers, and attorneys, and immediate family members of any of the foregoing persons; (b) governmental entities; (c) the Court, the Court's immediate family, and the Court staff; and (d) any person that timely and properly excludes himself or herself from the Class in accordance with Court-approved procedures.

**Numerosity**

31. At this time, Plaintiff does not know the exact number of members of the Class; however, given the nature of the claims and Experian's widespread sale of Experian Credit Scores to consumers, Plaintiff believes that members of the Classes

are so numerous that joinder of them is impracticable.

**Commonality**

32. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the Class members that predominate over questions that may affect individual Class members include:

    a. whether the Experian Credit Scores that Experian supplied the Class members violated § 1681g(f)(7)(A) of the FCRA;

    b. whether Experian misrepresented and/or concealed material information concerning the Experian Credit Scores that it sold to consumers; and

    c. whether Experian injured Plaintiff and the Class members as a result of its deceptive and misleading advertising and business practices.

**Typicality**

33. Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, purchased Defendants' Experian Credit Scores in a typical consumer setting and sustained damages from Defendants' wrongful conduct.

**Adequacy**

34. Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in litigating complex class actions.

35. Plaintiff has no interests that conflict with those of the Class members.

**Injunctive and Declaratory Relief**

36. The requirements for maintaining a class action pursuant to Rule 23(b)(2) are met, as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

37. Defendants' conduct is generally applicable to the Class as a whole, and Plaintiff seeks, inter alia, equitable remedies with respect to the Class as a whole. As such, Defendants' systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

**Monetary Relief**

38. The requirements for maintaining a class action for monetary relief pursuant to Rule 23(b)(3) are met, as the questions of law or fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

39. Defendants engaged in a common course of conduct in contravention of the law Plaintiff seeks to enforce individually and on behalf of the other Class members. Similar or identical statutory violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. Moreover, the common questions will yield common answers.

40. The class action mechanism is superior to other available means for the fair and efficient adjudication of this controversy for reasons including but not limited to the following:

    a. The damages individual Class members suffered are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendants' conduct.

    b. Furthermore, it would be virtually impossible for the Class members individually to redress effectively the wrongs done to them. Even if Class members themselves could afford such individual litigation, the court system could not. Individualized

litigation would unnecessarily increase the delay and expense to all parties and to the court system and presents a potential for inconsistent, varying, and/or contradictory rulings and judgments (which would establish incompatible standards of conduct for Defendants). By contrast, the class action device presents far fewer management difficulties, allows the hearing of claims which might otherwise go unaddressed because of the relative expense of bringing individual lawsuits, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

c. The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications or that would substantively impair or impede their ability to protect their interests.

## **DISCOVERY RULE**

41. Class members had no way of knowing about the deceptive practices complained of herein.

42. At no time could Plaintiff and the other class members have discovered through the exercise of reasonable diligence that Defendants were concealing and misrepresenting that they generated the Experian Credit Scores using a substantially different (and greatly inferior) credit scoring system than United States lenders routinely use in connection with lending decisions.

43. Plaintiff and the other class members did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Defendants' Experian Credit Score was not used by the majority of United States lenders.

44. Therefore the FCRA and California's Unfair Competition Law statutes' of limitations have been tolled by operation of the discovery rule.

## CLAIMS FOR RELIEF

### FIRST CLAIM
**Violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*
Violation of 15 U.S.C. § 1681g(f)(7)(A)
On Behalf of the Nationwide Class**

45. Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

46. Plaintiff brings this claim under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, on behalf of the Nationwide Class, for violation of 15 U.S.C. § 1681g(f)(7)(A).

47. Plaintiff's First Claim is based on the content of the Experian Credit Score reports themselves, not the content of www.experian.com insofar as it is not included within the Experian Credit Score reports.

48. Plaintiff is a "consumer" under the FCRA because Plaintiff is an individual. 15 U.S.C. § 1681a(c) ("The term 'consumer' means an individual.").

49. The FCRA applies to Defendants because each of these entities is a "person" under the FCRA; each of these entities is a "consumer reporting agency" under the FCRA; and the credit reports of each of these entities are "consumer reports" under the FCRA. 15 U.S.C. § 1681a(b), (d)(1), (f).

50. Under the FCRA, a "person" is an "individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." § 1681a(b).

51. Under the FCRA, the term "consumer reporting agency" means "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate

1  commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C. § 1681a(f).

52. Defendants are a "consumer reporting agency" under the FCRA because they are persons which, for monetary fees, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses means or facilities of interstate commerce for the purpose of preparing or furnishing consumer reports. 15 U.S.C. § 1681a(f).

53. Under the FCRA, the term "credit score":

> (i) means a numerical value or a categorization derived from a statistical tool or modeling system used by a person who makes or arranges a loan to predict the likelihood of certain credit behaviors, including default (and the numerical value or the categorization derived from such analysis may also be referred to as a "risk predictor" or "risk score"); and
>
> (ii) does not include--
>
> > (I) any mortgage score or rating of an automated underwriting system that considers one or more factors in addition to credit information, including the loan to value ratio, the amount of down payment, or the financial assets of a consumer; or
> >
> > (II) any other elements of the underwriting process or underwriting decision.

15 U.S.C.A. § 1681g(f)(2)(A).

54. The Experian Credit Scores are "credit scores" as the FCRA defines that term in § 1681g(f)(2)(A).

55. Under the FCRA, a consumer reporting agency that provides a credit score to a consumer must:

> supply the consumer with a credit score that is derived from a credit scoring model that is widely distributed to users by that consumer reporting agency in connection with residential real property loans or with a credit score that assists the consumer in understanding the credit scoring assessment of the credit behavior of the consumer and predictions about the future credit behavior of the consumer . . . .

15 U.S.C. § 1681g(f)(7)(A).

56. The Experian Credit Scores are not "derived from a credit scoring model that is widely distributed to [lenders] by [Experian] in connection with residential real property loans."

57. Nor are the Experian Credit Scores credit scores that "assist[] the consumer in understanding the credit scoring assessment of the credit behavior of the consumer and predictions about the future credit behavior of the consumer" because the Experian Credit Scores do not correspond to the credit scores lenders use in over 90% of United States lending decisions in a substantial number of cases.

58. Thus, when Experian provided the Experian Credit Scores to Plaintiff and the Nationwide Class members, Experian willfully or negligently failed to comply with § 1681g(f)(7)(A).

59. Experian's liability to Plaintiff and the Nationwide Class members arose from the same unlawful policies, practices, or procedures.

60. Experian's violations of § 1681g(f)(7)(A) were willful in that (i) it knew, or reasonably should have known, that it was failing to comply with the FCRA and/or (ii) it was acting in reckless disregard of its responsibilities under the FCRA.

61. In the alternative, Experian's violations of § 1681g(f)(7)(A) were negligent in that it had affirmative statutory duties to provide credit scores that complied with § 1681g(f)(7)(A), but failed to comply with this statutory duty.

62. If Experian willfully violated § 1681g(f)(7)(A), Plaintiff and the Nationwide Class are entitled to damages, as specified in § 1681n.

63. In the alternative, if Experian negligently violated § 1681g(f)(7)(A), Plaintiff and the Nationwide Class are entitled to damages at a separate proceeding, as specified in § 1681o.

64. Therefore, Plaintiff prays for relief as set forth below.

## SECOND CLAIM
### Violation of Unfair Competition Law, California Bus. & Prof. Code § 17200 *et seq.*
### On Behalf of the Nationwide Class

65. Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

66. Plaintiff brings this claim for violation of the Unfair Competition Law, BUS. & PROF. CODE § 17200 *et seq.* ("UCL"), on behalf of the Nationwide Class.

67. The circumstances giving rise to Plaintiff's and the Nationwide Class members' allegations include Defendants' corporate policies regarding the sale and marketing of the Experian Credit Scores.

68. Under the UCL, "unfair competition" means and includes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by" the FAL. BUS. & PROF. CODE § 17200.

69. By engaging in the acts and practices described herein, Defendants committed one or more acts of "unfair competition" as the UCL defines the term.

70. Defendants committed "unlawful" business acts or practices by, among other things, violating the FCRA and FDUTPA as described herein.

71. Defendants committed "unfair" business acts or practices by, among other things:

    a. Engaging in conduct for which the utility of the conduct, if any, is outweighed by the gravity of the consequences to Plaintiff and the members of the Nationwide Class;

    b. Engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and the members of the Nationwide Class; and

    c. Engaging in conduct that undermines or violates the spirit or intent of the consumer protection laws that this Class Action Complaint invokes.

72. Defendants committed "fraudulent" business acts or practices because, as alleged above, Defendants' representations concerning the Experian Credit Scores were false and misleading, and Plaintiff and the Nationwide Class members relied on those representations in purchasing the Experian Credit Score.

73. Defendants committed unlawful, unfair, and fraudulent business acts or practices by, among other things, engaging in conduct Defendants knew or should have known was likely to and did deceive reasonable consumers, including Plaintiff and the Nationwide Class members.

74. As detailed above, Defendants' unlawful, unfair, and fraudulent practices include making false and misleading representations that the Experian Credit Scores were used by the majority of United States lenders.

75. Plaintiff and the Nationwide Class members believed Defendants' representations that the Experian Credit Scores were used by the majority of United States lenders. Plaintiff and the Nationwide Class members would not purchase the Products, but for Defendants' misleading statements that the Experian Credit Scores

CLASS ACTION COMPLAINT
- 14 -

were used by the majority of United States lenders.

76. Plaintiff and the Nationwide Class members were injured in fact and lost money as a result of Defendants' conduct of improperly describing the Experian Credit Scores as used by the majority of United States lenders. Plaintiff and the Nationwide Class members paid for credit scores that were used by the majority of United States lenders, but did not receive credit scores that were used by the majority of United States lenders. Instead, Plaintiff and the Nationwide Class members receive Products that were not used by the majority of United States lenders.

77. Defendants' principal place of business is in California, and, on information and belief, the relevant transactions occurred over the internet and/or phone with Defendants' representatives in California. Thus, all transactions occurred, at least in part, in California, thereby making appropriate the application of the UCL to all transactions regardless of the location of the Nationwide Class member. Moreover, the gravamen, focus, and center of activity of Defendants' fraudulent actions occurred in California, further making appropriate application of the UCL to the Nationwide Class.

78. Plaintiff and the Nationwide Class members seek declaratory relief, restitution for monies wrongfully obtained, disgorgement of ill-gotten revenues and profits, injunctive relief, and other relief allowable under Business and Professions Code section 17203, including but not limited to enjoining Defendants from continuing to engage in its unfair, unlawful, and fraudulent conduct alleged herein.

79. Therefore, Plaintiff prays for relief as set forth below.

### THIRD CLAIM

**Violation of Unfair Competition Law,
California Bus. & Prof. Code § 17200 *et seq.*
On Behalf of the Class**

80. Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

81. This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Sections 501.201 to 501.213, *Florida Statutes*. The express purpose of the Act is to "protect the consuming public…from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce" Section 501.202(2).

82. The sale of each Experian Credit Score falls within the meaning of "trade or commerce" within the scope of the FDUTPA, Sections 501.201 to 501.213, *Florida Statutes*.

83. Plaintiff and the Florida Class members are "consumer[s]" as defined by Section 501.203, *Florida Statutes*. Each of the Experian Credit Scores is a "good" within the meaning of the Act. Defendants were engaged in trade or commerce within the meaning of the Act.

84. Section 501.204(1), *Florida Statutes* declares as unlawful "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce".

85. Defendants violated the Act by engaging in unfair and deceptive practices and false advertising by representing that the Experian Credit Scores were used by the majority of United States lenders, when they were not.

86. As a result, Plaintiff and the Florida Class members purchased a credit score believing they were used by the majority of United States lenders, when they were not. This perception induced reasonable consumers, including Plaintiff, to purchase the Experian Credit Score and/or pay more for the Experian Credit Score, which they otherwise would not have purchased.

87. The reasonable consumers rely on Credit Reporting Agencies to honestly represent the users of the credit scores they sell.

88. The damages suffered by the Plaintiff and the Florida Class were directly and proximately caused by the deceptive, misleading and unfair practices of Defendants, as described above.

89. Pursuant to Section 501.211(1), Plaintiff and other Florida Class members seek to a declaratory judgment and court order enjoining the above described wrongful acts and practices of the Defendants and for restitution and disgorgement.

90. Additionally, pursuant to Sections 501.211(2) and 501.2105, *Florida Statutes*, Plaintiff and the Class make claims for damages, attorney's fees and costs.

91. Therefore, Plaintiff prays for relief as set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the members of the Classes, respectfully requests the Court to enter an Order:

A. certifying the proposed Classes under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3), as set forth above;

B. declaring that Defendants are financially responsible for notifying the Class members of the pendency of this suit;

C. declaring that Defendants have committed the violations of law alleged herein;

D. providing for any and all injunctive relief the Court deems appropriate;

E. awarding statutory damages in the maximum amount for which the law provides;

F. awarding monetary damages, including but not limited to any compensatory, incidental, or consequential damages in an amount that the Court or jury will determine, in accordance with applicable law;

G. awarding punitive damages in accordance with proof and in an amount consistent with applicable precedent;

H. providing for any and all equitable monetary relief the Court deems appropriate;

I. awarding Plaintiff [his/her] reasonable costs and expenses of suit, including attorneys' fees;

J.    awarding pre- and post-judgment interest to the extent the law allows; and

K.    for such further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all claims so triable.

Date: May 11, 2018                        Respectfully submitted,

**REESE LLP**

By: */s/ Michael R. Reese*
    Michael R. Reese
    *mreese@reesellp.com*
    George V. Granade
    *ggranade@reesellp.com*
    100 West 93rd Street, 16th Floor
    New York, New York  10025
    Telephone: (212) 643-0500
    Facsimile: (212) 253-4272

**LEVIN, PAPANTONIO, THOMAS, MITCHELL, RAFFERTY & PROCTOR, P.A.**
Matthew David Schultz
*mschultz@levinlaw.com*
316 South Baylen Street, Suite 600
Pensacola, Florida  32502-5996
Telephone: (850) 435-7140

**HALUNEN LAW**
Melissa Weiner
*Weiner@halunenlaw.com*
1650 IDS Center
Minneapolis, Minneapolis 55402
Telephone: 612.605.4098

*Counsel for Plaintiff and the Proposed Class*