Richard J. Grabowski (State Bar No. 125666)
Edward S. Chang (State Bar No. 241682)
Jeremy S. Close (State Bar No. 260226)
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, California  92612
(T) 949.851.3939
(F) 949.553.7539
rgrabowski@jonesday.com
echang@jonesday.com
jsclose@jonesday.com

*Attorney for Defendants*
*Experian Holdings, Inc.; Experian*
*Information Solutions, Inc.; and*
*ConsumerInfo.com, Inc.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RACHEL STOVER, on behalf of herself and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>EXPERIAN HOLDINGS, INC.; EXPERIAN INFORMATION SOLUTIONS, INC.; and CONSUMERINFO.COM, INC. dba EXPERIAN SERVICES<br><br>Defendants. | CASE NO. 8:18-CV-00826-CJC-DFM<br><br>Assigned to:  Judge Cormac J. Carney<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL INDIVIDUAL ARBITRATION AND STAY, OR IN THE ALTERATIVE, DISMISS ACTION**<br><br>[Filed concurrently with Declarations of  David Williams and Edward Chang, and Request for Judicial Notice]<br><br>Date:  October 29, 2018<br>Time:  1:30 p.m.<br>Dept.:  9B<br><br>Complaint filed: May 11, 2018 |

1   TO ALL PARTIES AND THEIR COUNSEL OF RECORD, PLEASE

2   TAKE NOTICE that, on October 29, 2018 at 1:30 p.m., or as soon thereafter as the

3   parties may be heard, in Courtroom 9B of the United States District Court for the

4   Central District of California, located at 411 West Fourth Street, Santa Ana,

5   California, 92701-4516, defendants Experian Holdings, Inc. ("EHI"), Experian

6   Information Solutions, Inc. ("EIS"), and ConsumerInfo.com, Inc. ("CIC")

7   (collectively, "Defendants") will, and hereby do, move this Court for an order

8   compelling Plaintiff Rachel Stover ("Plaintiff") to submit her claims to binding

9   arbitration and for an order staying all proceedings pending arbitration, or in the

10   alternative, dismissing this lawsuit with prejudice.

11   The Motion is made pursuant to the Federal Arbitration Act ("FAA"), 9

12   U.S.C. §§ 1 *et seq*., and on the grounds that Plaintiff agreed to binding individual

13   arbitration of Plaintiff's disputes with Defendants.  Moreover, pursuant to 9 U.S.

14   Code § 3 and Federal Rules of Civil Procedure 12(b)(1) and 12(b)(3), Defendants

15   move to stay the instant proceedings pending completion of the arbitration of this

16   matter, or to dismiss this entire action for lack of subject matter jurisdiction and

17   improper venue.

18   This Motion is based on this Notice of Motion and Motion, the supporting

19   Memorandum of Points and Authorities and the Declarations of David Williams

20   and Edward Chang filed concurrently herewith, the accompanying Request for

21   Judicial Notice, and all pleadings and papers on file in this action, together with

22   such further evidence and argument as may be submitted in responsive briefing and

23   at oral argument.

24   This motion is made following the conference of counsel pursuant to Local

25   Rule 7-3, which was conducted on July 19, 2018.

26

27

28

1

2   Dated:  August 24, 2018              */s/ Richard J. Grabowski*
                                         Richard J. Grabowski
3                                        Edward S. Chang
                                         Jeremy S. Close
4                                        JONES DAY
                                         3161 Michelson Drive, Suite 800
5                                        Irvine, California  92612
                                         (T) 949.851.3939
6                                        (F) 949.553.7539

7                                        Attorneys for Defendants Experian
                                         Holdings, Inc.; Experian Information
8                                        Solutions, Inc.; and ConsumerInfo.com,
                                         Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION TO COMPEL ARBITRATION
Case No. 8:18-CV-00826-CJC-DFM

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................ 1

II.   STATEMENT OF FACTS ......................................................................... 2

    A.    PLAINTIFF'S ALLEGATIONS ............................................. 2

    B.    PLAINTIFF'S AGREEMENT TO ARBITRATE .............................. 4

    C.    CASES ENFORCING THESE TERMS AND CONDITIONS .......... 7

III.  LEGAL ARGUMENT ............................................................................... 7

    A.    STOVER AGREED TO THE TERMS AND CONDITIONS, WHICH CONTAIN A BINDING ARBITRATION AGREEMENT ........................................................................ 8

    B.    STOVER'S CLAIMS ARE COVERED BY THE ARBITRATION AGREEMENT CONTAINED IN THE TERMS AND CONDITIONS ............................................ 12

    C.    ARBITRATION SHOULD PROCEED ON AN INDIVIDUAL BASIS ............................................................................. 13

    D.    THE COURT SHOULD DISMISS THIS ACTION OR, IN THE ALTERNATIVE, STAY THIS ACTION ................................ 14

IV.  CONCLUSION ........................................................................................ 15

# TABLE OF AUTHORITIES

**Page**

CASES

*Argueta v. Banco Mexicano, S.A.*,
 87 F.3d 320 (9th Cir. 1996) ........................................................................ 14

*AT&T Mobility LLC v. Concepcion*,
 563 U.S. 333 (2011) ...................................................................................... 7

*Brown v. DIRECTV LLC*,
 No. CV 12-08382 DMB (Ex), 2013 WL 3273811 (C.D. Cal. Jun.
 26, 2013) ....................................................................................................... 13

*Cayanan v. Citi Holdings, Inc.*,
 928 F.Supp.2d 1182 (S.D. Cal. 2013) ........................................................ 13

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
 207 F.3d 1126 (9th Cir. 2000) ........................................................... 8, 12, 13

*Crawford v. Beachbody, LLC*,
 No. 14cv1583-GPC(KSC), 2014 WL 6606563 (S.D. Cal. Nov. 5,
 2014) ...................................................................................................... 10, 11

*Dean Witter Reynolds, Inc. v. Byrd*,
 470 U.S. 213 (1985) ...................................................................................... 8

*DeVries v. Experian Information Solutions, Inc.*,
 No. 16-cv-02953-WHO, 2017 WL 733096 (N.D. Cal. Feb. 24,
 2017) ................................................................................................... 7, 9, 10

*Fteja v. Facebook, Inc.*,
 841 F. Supp. 2d 829 (S.D.N.Y. 2012) ........................................................ 11

*Graf v. Match.com, LLC*,
 No. CV 15-3911 PA, 2015 WL 4263957 (C.D. Cal. July 10, 2015) ........... 10, 11

*Johnmohammadi v. Bloomingdale's, Inc.*,
  755 F.3d 1072 (9th Cir. 2014).............................................................................. 14

*Knutson v. Sirius XM Radio Inc.*,
  771 F.3d 559 (9th Cir. 2014)............................................................................ 8, 9

*Luna v. Kemira Specialty, Inc.*,
  575 F. Supp. 2d 1166 (C.D. Cal. 2008).............................................................. 14

*Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*,
  89 Cal. App. 4th 1042 (2001)................................................................................ 9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) ............................................................................................ 8, 13

*Murphy v. DirecTV, Inc.*,
  724 F.3d 1218 (9th Cir. 2012)............................................................................. 13

*Nguyen v. Barnes & Noble, Inc.*,
  763 F.3d 1171 (9th Cir. 2014).................................................................... 8, 9, 11

*Simula, Inc. v. Autoliv, Inc.*,
  175 F.3d 716 (9th Cir. 1999)............................................................................... 12

*Specht v. Netscape Commc'ns Corp.*,
  306 F.3d 17 (2d Cir. 2002) .................................................................................... 9

*Sullivan v. Oracle Corp.*,
  51 Cal. 4th 1191 (2011)......................................................................................... 3

*Sun Microsystems, Inc. v. Microsoft Corp.*,
  188 F.3d 1115 (9th Cir. 1999)............................................................................... 4

*Swift v. Zynga Game Network, Inc.*,
  805 F.Supp.2d 904 (N.D. Cal. 2011).................................................................. 11

*Tompkins v. 23andMe, Inc.*,
  840 F.3d 1016 (9th Cir. 2016)............................................................................... 8

*Tompkins v. 23andMe, Inc.*,
   No. 5:13-CV-05682-LHK, 2014 WL 2903752 (N.D. Cal. June 25,
   2014) ............................................................................................................. 10

*United Commc'ns Hub, Inc. v. Qwest Commc'ns, Inc.*,
   46 F. App'x 412 (9th Cir. 2002) .................................................................. 13

**STATUTES**

9 U.S.C. § 2 ................................................................................................................ 7

9 U.S.C. § 3 ................................................................................................. 2, 14, 15

15 U.S.C. § 1681g ................................................................................................. 2, 3, 6

California Bus. & Prof. Code § 17200 *et seq.* ...................................................... 3, 4

Florida Deceptive and Unfair Trade Practices Act ............................................... 3, 4

# I.  **INTRODUCTION**

On June 17, 2014, Plaintiff Rachel Stover went to the website www.experian.com and accepted an offer where she paid $1 for an Experian credit report, a PLUS Score credit score, and a 7-day trial membership in the Experian Credit Tracker credit monitoring product, which transitioned into a monthly membership if Plaintiff did not cancel during the trial period.  When Stover placed the order, she and Defendant ConsumerInfo.com, Inc. ("CIC")—which is owned by Defendant Experian Holdings, Inc. ("EHI") and is an affiliated entity of Defendant Experian Information Solutions, Inc. (EIS)—entered into a written agreement to arbitrate "all disputes and claims"  between Stover and CIC, or any of CIC's parent entities (such as EHI), subsidiaries, or affiliates (such as EIS):

> CIC and you agree to arbitrate ***all disputes and claims*** between us, except any disputes or claims which under governing law are not subject to arbitration.  This agreement to arbitrate is intended to be broadly interpreted and to make all disputes and claims between us subject to arbitration to the fullest extent permitted by law.  . . . .

> For purposes of this arbitration provision, references to "CIC," "you," and "us" ***shall include our respective parent entities, subsidiaries, affiliates, agents, employees, predecessors in interest, successors and assigns, websites of the foregoing***, as well as all authorized or unauthorized users or beneficiaries of services, products or information under this or prior Agreements between us.  Notwithstanding the foregoing, either party may bring an individual action in small claims court.  You agree that, by entering into this Agreement, you and CIC are each waiving the right to a trial by jury or to participate in a class action.  This Agreement evidences a transaction in interstate commerce, and thus the Federal Arbitration Act governs the interpretation and enforcement of this arbitration provision.  This arbitration provision shall survive termination of this Agreement.

(Declaration of David Williams ("Williams Decl."), Ex. D (emphasis added).)  Stover further agreed to pursue such claims only on an individual (*i.e.,* non-class) basis.  (*Id.*)  Pursuant to Stover's written agreement, Defendants hereby elect to arbitrate all of the claims that Stover pleads in this action—claims that are specifically grounded upon her transaction with CIC.[1]

Thus, under the Federal Arbitration Act (9 U.S.C. § 1, *et seq*.), Defendants EHI, EIS, and CIC respectfully move this Court for an Order compelling this matter to arbitration, on an individual basis, before the American Arbitration Association (AAA), as required under Stover's written agreement, and staying this action, pursuant to 9 U.S.C. § 3 pending Plaintiff's compliance with the contractual arbitration agreement, or alternatively dismissing this action under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(3).

## II.   STATEMENT OF FACTS

### A.   PLAINTIFF'S ALLEGATIONS

Stover pleads that Defendant EHI "is a privately held corporation with its headquarters in Costa Mesa, California," and that Defendants EIS and CIC are "wholly owned subsidiary[ies]" of EHI, which also are headquartered in Costa Mesa. (Compl. ¶¶ 22-24.)  Stover fails to allege what actions any particular Defendant took, but merely claims that all acts alleged were done by "Defendants" or "Experian," which she defines to include all Defendants.  (*Id*., ¶ 1.)

Stover alleges that "Defendants" sold "Experian Credit Scores" online and, from May 11, 2010 to the present, falsely advertised that these credit scores were accurate, reliable, widely used, and "the same credit scores relied upon by lenders."

---

[1] Stover claims—four years after her purchase of the above products—that Defendants deceived her by stating that PLUS Scores "were the same credit scores relied upon by lenders," and brings her claims based upon these alleged misrepresentations.  (Dkt No. 1 ("Compl."), ¶¶ 2, 45-91.)  Stover's allegations cannot be squared with the express language in the Terms and Conditions which state that the PLUS Score "is not used by lenders."  (Williams Decl., ¶ 13, Ex. D.)   The terms also advised consumers that the Experian credit report obtained from CIC through this website is *not* a consumer disclosure pursuant to 15 U.S.C. § 1681g of the FCRA.  (*Id.*, ¶ 12, Ex. D.)  Nevertheless, Stover alleges that the products she purchased do not comply with the FCRA.  (Compl. ¶¶ 45-64.)

(*Id.*, ¶¶ 2, 8.)  She alleges that these scores "are not the credit scores used by the vast majority of lenders" because they are not FICO scores.[2]  (*Id.*, ¶ 5.)  As a result, the scores are "vastly inferior, inaccurate, and of little value to consumers." (*Id.*)

Stover alleges that she purchased "one or more Experian Credit Scores, including an Experian Credit Score on or about June 17, 2014," and made this purchase "based upon the representations that the Experian Credit Scores were those used by lenders." (*Id.*, ¶¶ 12-13.)  Stover alleges three nationwide class claims.  First, she alleges (without any facts) that all Defendants are consumer reporting agencies, and that they violated 15 U.S.C. § 1681g(f)(7)(A) of FCRA because they supplied her with credit scores that are not "derived from a credit scoring model that is widely distributed to [lenders] by [Experian] in connection with residential real property loans," and scores that do not "assist the consumer in understanding the credit scoring assessment of the credit behavior of the consumer and predictions about the future credit behavior of the consumer," because the scores are not FICO scores.  (*Id.*, ¶¶ 56-57.)  Second, Stover, a Florida resident (*Id.*, ¶ 11), pleads the first of two claims entitled "Violation of Unfair Competition Law, California Bus. & Prof. Code § 17200 *et seq.*," alleging that Defendants' sale and marketing of Experian Credit Scores constitute unlawful, unfair, and fraudulent acts in violation of the California Unfair Competition Law ("UCL").[3]  (*Id.*, pg. 13, ¶¶ 70-74.)  Finally, Stover pleads the second "Violation of Unfair Competition Law, California Bus. & Prof. Code § 17200 *et seq.*" claim, pleading that Defendants violated the "Florida Deceptive and Unfair

---

[2] FICO, also known as Fair, Isaac and Company, is a data analytics company that, like many other companies, creates and sells credit scores.  While numerous credit scores exist in the market, and indeed companies that create and provide credit scores may have multiple models that are utilized, FICO has historically held the highest market share for sales of consumer credit scores to lenders.  https://www.consumerfinance.gov/ask-cfpb/what-is-a-fico-score-en-1883/

[3] Courts have repeatedly recognized a general "presumption against extraterritorial application" of California state law, including the UCL.  *See, e.g., Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011) ("Neither the language of the UCL nor its legislative history provides any basis for concluding the Legislature intended the UCL to operate extraterritorially").  In the event the Court denies this jurisdictional motion, Defendants will move to dismiss this claim and Stover's other improperly pled claims under Rule 12 pursuant to its previous reservation of rights.  (Dkt. No. 23.)

Trade Practices Act" by falsely advertising that "the Experian Credit Scores were used by the majority of United States Lenders, when they were not." (*Id.*, pg. 15, ¶¶ 81, 85.)   Stover seeks damages, declaratory relief, and an injunction to enjoin Defendants "from continuing to engage in its unfair, unlawful and fraudulent conduct alleged" in the Complaint (*i.e.*, the sale and marketing of the PLUS Scores).[4]

## B.   PLAINTIFF'S AGREEMENT TO ARBITRATE

To obtain the credit report, PLUS Score, and Experian Credit Tracker membership from CIC, Plaintiff had to click a button demonstrating her assent to be bound by CIC's Terms and Conditions:



(Williams Decl., ¶¶ 4-8, Exs. B-C.)   At the time of Plaintiff's transaction, CIC's Terms and Conditions appeared as a full-text hyperlink on every page of CIC's order process, including during the information entry process in the graphic above.   (*See id.*)   A full-text hyperlink to the Terms and Conditions also is contained within the disclosure and acknowledgement directly above the "Submit Secure Order" button. (*Id.*)   The disclosure and acknowledgment specifically advised Plaintiff that by clicking the "Submit Secure Order," she was agreeing to CIC's Terms and Conditions:

> Click "Submit Secure Order" to agree to the **Terms and Conditions**, acknowledge receipt of our **Privacy Notice** and **Ad Targeting Policy** and agree to its terms, and

---

[4] Stover's request for injunctive relief must necessarily fail, because Experian no longer markets these credit scores, and has been marketing FICO scores to consumers since late 2014. (Williams Decl. ¶¶ 17-18.)   *Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1123 (9th Cir. 1999) (Plaintiff cannot obtain an injunction under the UCL for past conduct).

confirm your authorization for ConsumerInfo.com, Inc., an Experian ® company, to obtain your credit score and report and submit your secure order.

(*Id*.)  To complete her transaction, Stover clicked the "Submit Secure Order" button, thus agreeing to be bound by CIC's Terms and Conditions.  (*Id*.)

The Terms and Conditions on CIC's website began by admonishing Stover— in ALL CAPS—that she should "PLEASE READ THESE TERMS AND CONDITIONS CAREFULLY," and that, if she did not wish to be bound by them, "DO NOT ORDER."  (*Id*. at ¶ 9, Ex. D.)  Nonetheless, Stover placed an order with CIC, *see* Compl. at ¶ 12; Williams Decl., ¶ 16, and thus, agreed to the Terms and Conditions applicable to that purchase.

The Terms and Conditions that Stover agreed to had a mandatory arbitration agreement.  (*Id*. at ¶ 10, Ex. D.)  Pursuant to that agreement, Stover and CIC agreed "to arbitrate all disputes and claims between us . . . to the fullest extent permitted by law." (*Id*.)  This agreement to arbitrate extends to CIC's "parent entities, subsidiaries, [and] affiliates . . . ." (*Id*.)   EHI is a parent entity of CIC, and EIS is an affiliated entity of CIC.  (*Id*. at ¶ 2 and Ex. A.)  In fact, Stover pleads as much.  (Compl. ¶¶ 22-24 (alleging that EIS and CIC is each a "wholly-owned subsidiary of" EHI))  Stover also pleads that EHI, EIS, and CIC are the same entity.  (*Id*., ¶¶ 1, 6, 8, 9 (defining all Defendants as "Experian," and alleging they all charge customers for inaccurate credit scores and mislead customers by falsely stating these are the same credit scores used by lenders.)  Stover further agreed that she would arbitrate her claims against EHI, EIS, and CIC on an individual basis:  "YOU AND CIC AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING." (Williams Decl., ¶ 11, Ex. D.)

After the arbitration agreement, the Terms and Conditions advised Stover of the nature of the PLUS Score, which is the subject of her lawsuit:

DEFENDANTS' MOTION TO COMPEL ARBITRATION
Case No. 8:18-CV-00826-CJC-DFM

**PLUS SCORE®**
The PLUS Score, with scores ranging from 330 to 830, is a user-friendly credit score model developed by Experian to help you see and understand how lenders view your credit worthiness. It is not used by lenders, but it is indicative of your overall credit risk.

(*Id*. at ¶ 13 and Ex. D.)   The Terms and Conditions also advised the consumer that the credit report being offered by CIC is not a "consumer disclosure" pursuant to Section 1681g of the FCRA:

The credit report you are requesting from CIC is not intended to constitute the disclosure of Experian information required by the FCRA or similar state laws. Experian's National Consumer Assistance Center provides a proprietary consumer disclosure that is different from the consumer credit report provided by CIC. This disclosure report must be obtained directly from Experian by going to www.experian.com/dispute, or by calling 888-EXPERIAN.

(*Id*. at ¶ 12 and Ex. D)   Finally, the Terms and Conditions have a severability provision, which provides:   "If any provision is deemed to be unlawful or unenforceable, it will not affect the validity and enforceability of the remaining provisions." (*Id*., Ex. D.)

Numerous consumers, like Stover, that have purchased credit reports, credit scores, or credit monitoring products from CIC have invoked the same arbitration agreement contained in the same Terms and Conditions applicable to CIC's consumer credit products against EIS.   (*Id*., ¶ 15.)   In fact, since 2015, at least twenty arbitration demands have been instituted against EIS before the AAA arising out of these Terms and Conditions.   (*See* Declaration of Edward Chang, ¶ 2.)   In other words, not only do consumers in Stover's shoes understand that, in transacting with CIC, they are agreeing to arbitrate disputes with EIS and EHI, but consumers routinely invoke that arbitration agreement.   (*Id*.)

### C.     <u>CASES ENFORCING THESE TERMS AND CONDITIONS</u>

As demonstrated in the accompanying Request for Judicial Notice (RJN), the same or substantially similar Terms and Conditions that are at issue in this motion have been upheld and enforced by courts in this district in numerous other cases in which Defendants have filed motions to compel arbitration:

- *Johnson v. ConsumerInfo.com, Inc.*, C.D. Cal. Case No. CV 11-02753-JVS (FMOx) (August 3, 2011). (RJN, Ex. A.)

- *Winzen v. Experian Information Solutions, Inc.*, C.D. Cal. Case No. SACV 10-01783-JVS (RZx) (September 12, 2011). (RJN, Ex. B.)

- *Waring v. ConsumerInfo.com, Inc.*, C.D. Cal. Case No. SACV 11-0639-JVS (FMOx) (November 14, 2011). (RJN, Ex. C.)

- *Bird v. ConsumerInfo.com, Inc.*, C.D. Cal. Case No. SACV 11-0618-JVS (FMOx) (November 14, 2011). (RJN, Ex. D.)

- *Grosz v. ConsumerInfo.com, Inc.*, C.D. Cal. Case No. SACV 11-0550-JVS (FMOx) (November 14, 2011). (RJN, Ex. E.)

- *Possin v. Experian Information Solutions, Inc.*, C.D. Cal. Case No. SACV 10-00156-JVS (ANx) (December 5, 2011). (RJN, Ex. F.)

*See also DeVries v. Experian Information Solutions, Inc.*, No. 16-cv-02953-WHO, 2017 WL 733096 (N.D. Cal. Feb. 24, 2017). To grant this motion, this Court need do nothing more than follow these other district court cases.

### III.     <u>LEGAL ARGUMENT</u>

The Federal Arbitration Act provides that a written arbitration provision contained in a "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects both a "liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 1745 (2011) (citations and internal quotation marks omitted). In passing the FAA, Congress

established a strong federal policy in favor of arbitration, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), "notwithstanding any state substantive or procedural policies to the contrary." *Id.*; *see also Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1022 (9th Cir. 2016).  In short, the Supreme Court and Ninth Circuit mandates that federal courts are required to "rigorously enforce agreements to arbitrate," *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985), and "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration ...."  *Moses*, 460 U.S. at 24-25; *Tompkins*, 840 F.3d at 1022.

Given the strong federal policy favoring arbitration, a court adjudicating the question of arbitrability plays a very limited role.  It determines only:  (1) whether the parties entered into a valid arbitration agreement, and (2) whether the agreement encompasses the dispute at issue.  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  As demonstrated below, Stover entered into a valid arbitration agreement, and the claims that Stover pleads in this case fall squarely within the arbitration agreement.

### A.   STOVER AGREED TO THE TERMS AND CONDITIONS, WHICH CONTAIN A BINDING ARBITRATION AGREEMENT

Stover is bound by the Terms and Conditions, including the agreement obligating her to arbitrate, on an individual basis, any claims against CIC or its parent and affiliated entities, such as EHI and EIS. (Williams Decl., ¶¶ 4-8, 16, Exs. B-D.) "While new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract." *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014), quoting *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004).  "[U]nder California law, mutual assent is a required element of contract formation." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014).  "Mutual assent may be manifested by written or spoken words, or by conduct and acceptance of contract terms may be implied through action

or inaction." *Id.* (internal citations and quotation marks omitted); *see also Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 29 (2d Cir. 2002) (applying California law to an online contract).

Courts within this Circuit routinely enforce internet agreements where, as here: (1) "the user is required to affirmatively acknowledge the agreement before proceeding with use of the website," or (2) "the website puts a reasonably prudent user on inquiry notice of the terms of the contract," which "depends on the design and content of the website and the agreement's webpage." *Nguyen*, 763 F.3d at 1176-77; *see also* RJN, Exs. A-F.  Under California law, "a party cannot avoid the terms of a contract on the ground that he or she failed to read it before signing." *Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1049 (2001).  As a matter of law, Stover agreed to the Terms and Conditions because she had clear notice of the Terms and Conditions, and she was required to "affirmatively acknowledge the agreement before proceeding with" her purchase of the products, including the PLUS Score that is the subject of her lawsuit. *See Nguyen*, 763 F.3d at 1176-77; *DeVries*, 2017 WL 733096 at *6-7 (upholding the same Experian Terms and Conditions acceptance protocol because "[t]he text containing the Terms and Conditions hyperlink was located directly above that button and indicated that clicking 'Submit Secure Purchase' constituted acceptance of those terms")*. See also* RJN, Exs. A-F.

In addition to the five Central District of California district court decisions attached to the accompanying Request for Judicial Notice, the Northern District of California's decision in *DeVries*, 2017 WL 733096, is on all fours—it upheld the arbitration provision in CIC's Terms and Conditions that were presented to consumers in the exact same manner as they were presented to Stover in this case. In *DeVries*, the plaintiff brought a class action lawsuit against EIS under the FCRA, alleging that EIS failed to provide consumers with their annual free credit reports and instead steered consumers towards paid credit reports.  The credit report that the

plaintiff purchased was sold by CIC and required the plaintiff to assent to the Terms and Conditions of the purchase, including arbitration of his claims against CIC and its affiliates like EIS.  The Court rejected the plaintiff's argument that he did not consent to or have notice of the arbitration provision, and found that Experian's process—presenting the text containing the Terms and Conditions hyperlink directly above the "Submit Secure Purchase" button and indicating that clicking the button constituted acceptance of those Terms and Conditions—was sufficient to provide the consumer with adequate notice and bind him to the agreement.  *Id*. at *6.  The exact same procedure was presented to Stover in this case, and it is equally enforceable.

The *DeVries* court was persuaded by yet another case from this district that is on all fours, *Graf v. Match.com, LLC*, No. CV 15-3911 PA (MRWx), 2015 WL 4263957 (C.D. Cal. July 10, 2015).  There, the district court ruled that users of Match.com's website agreed to an arbitration provision in the Terms of Use "when they clicked on a 'Continue' or other similar button on the registration page where it was explained that by clicking on that button, the user was affirming that they would be bound by the Terms of Use, which were always hyperlinked and available for review."  *Id*. at *4.  Just as in *Graf*, the Terms and Conditions at issue here were hyperlinked at the bottom of every page of the order process on the website; they were expressly referenced in the disclosure and acknowledgment at the end of the information entry process located above the "Submit Secure Order" button; *and* the disclosure and acknowledgment stated that by clicking the button, "Submit Secure Order," the online user was accepting the Terms and Conditions.  (Williams Decl. ¶¶ 4-8.)  *See also Tompkins v. 23andMe, Inc.*, No. 5:13-CV-05682-LHK, 2014 WL 2903752, *7-9 (N.D. Cal. June 25, 2014) (same; finding "Plaintiffs received adequate notice regarding the [Terms of Service] . . . [when] each named Plaintiff clicked a box or button that appeared near a hyperlink to the [Terms of Service] to indicate acceptance").

*Crawford v. Beachbody, LLC*, No. 14cv1583-GPC(KSC), 2014 WL 6606563

(S.D. Cal. Nov. 5, 2014), also is indistinguishable from the facts at hand.  There, the district court found that the plaintiff had agreed to a forum selection clause found in a website's Terms and Conditions.  Just like here, the plaintiff in *Crawford* "had to click an orange button that read 'PLACE ORDER.'"  *Id.* at *3.  Above the button the following text was presented to the plaintiff:  "By clicking Place Order below, you are agreeing that you have read and understand the Beachbody Purchase Terms and Conditions, and Team Beachbody Terms and Conditions."  *Id.*  Just like here, "[t]he terms 'Terms and Conditions' were in blue font while the rest of the language in the sentence was in grey font, which was hyperlinked to the full text of the Terms and Conditions."  *Id.*

*Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829 (S.D.N.Y. 2012) also is indistinguishable from the facts at hand.  There, Facebook.com had disclosed: "By clicking Sign Up, you are indicating that you have read and agree to the Terms of Service."  841 F.Supp.2d at 835.  Stover likewise was warned:  By clicking the button, "Submit Secure Order," she was accepting the Terms and Conditions. *See also Swift v. Zynga Game Network, Inc.*, 805 F.Supp.2d 904, 911 (N.D. Cal. 2011) (enforcing terms of use because "Plaintiff admits that she was required to and did click on an 'Accept' button directly above a statement that clicking on the button served as assent to the [website's] terms of service along with a blue hyperlink directly to the terms of service").

In short, by disclosing to users they are agreeing to the Terms and Conditions, and requiring affirmative action by the user to assent to those terms, the Terms and Conditions applicable to Stover's purchase are thus agreed to and enforceable.  In fact, the Ninth Circuit in *Nguyen* found that these types of online agreements are "consistently enforced."  763 F.3d at 1176.  Therefore, Stover agreed to be bound by the arbitration provision found in the Terms and Conditions, and, hence, an agreement to arbitrate exists between Stover and Defendants.  *See Graf*, 2015 WL 4263957, at *4.

**B.**     **STOVER'S CLAIMS ARE COVERED BY THE ARBITRATION AGREEMENT CONTAINED IN THE TERMS AND CONDITIONS**

All of Stover's claims are covered by the arbitration agreement contained in the Terms and Conditions.  That agreement is broad in scope, and covers "all disputes and claims" between Stover and CIC, as well as CIC's parent and affiliated entities, such as EHI and EIS.  Indeed, in order to state a claim against EHI and EIS, Stover pleads that Defendants are one and the same entity—alleging that "Experian," defined to include EHI, EIS, and CIC, injured her by selling her credit scores that are not used in the vast majority of lending decisions.  (Compl., ¶¶ 1, 12, 15, 17, 19.)  And, it cannot be legitimately debated that this suit relates to Stover's purchase of PLUS Score credit scores from CIC.  After all, Stover's claims are expressly grounded upon this very transaction.  (*Id*. at ¶¶ 56-58 (alleging that Defendants harmed her by providing her with Experian Credit Scores that are not derived from a scoring model that is widely distributed to lenders or that assist her in understanding the credit scoring assessment of her credit behavior); *id*. at ¶¶ 72-74 (alleging that Defendants harmed her by making false and misleading representations that "the Experian Credit Scores were used by the majority of United States lenders," which she then relied on); and *id*. at ¶¶ 85-88 (same).)  Moreover, in order to state claims against EIS and EHI, Stover specifically pleads that EHI owns EIS and CIC, and that they are all one and the same entity—alleging that EIS and CIC are "wholly owned subsidiar[ies]" of EHI, who all have their headquarters in Costa Mesa.  (Compl. ¶¶ 22-24.)  Stover's own allegations and the plain language of the arbitration provision confirm that her claims against EHI and EIS are also subject to arbitration.

Agreements to arbitrate "[a]ny dispute, controversy or claim" are "broad and far reaching," *Chiron Corp.*, 207 F.3d at 1131, and require arbitration of all disputes that "touch matters covered by the contract containing the arbitration clause," *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999).  All of Stover's claims touch

upon matters contained in the Terms and Conditions.  Indeed, and again, her $1.00 purchase of a credit report and PLUS Score from CIC and her one month membership in Experian Credit Tracker forms the basis of all of her claims in this matter.  In short, the Court must decide "whether the agreement encompasses the dispute at issue," *see Chiron*, 207 F.3d at 1130—which Stover pleads it does—and, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses*, 460 U.S. at 24-25; *see also United Commc'ns Hub, Inc. v. Qwest Commc'ns, Inc.*, 46 F. App'x 412, 413 (9th Cir. 2002) ("The [arbitration] clause uses the phrase 'relating to,' which has a broad and inclusive meaning."); *Cayanan v. Citi Holdings, Inc.*, 928 F.Supp.2d 1182, 1208 (S.D. Cal. 2013) (explaining that inclusion of "relating to" language required a broader interpretation of the arbitration clause); *Brown v. DIRECTV LLC*, No. CV 12-08382 DMB (Ex), 2013 WL 3273811, at *6 (C.D. Cal. Jun. 26, 2013) (holding that claims against DIRECTV "fall within the scope of the arbitration clause" because all claims "relating to" the customer agreement were subject to arbitration).

Because each of Stover's claims falls squarely within the scope of the arbitration agreement contained in the Terms and Conditions—which broadly requires the arbitration of "all disputes and claims"—the Court should compel this matter to arbitration.

## C. ARBITRATION SHOULD PROCEED ON AN INDIVIDUAL BASIS

Stover must arbitrate her claims on an individual basis.  The Terms and Conditions contain an explicit class waiver: "YOU AND CIC AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING." (Williams Decl., ¶ 11 and Ex. D.)  Class waivers in arbitration provisions are enforceable.  *See Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1225 (9th Cir. 2012)

1   (citing *Concepcion*, 563 U.S. 333 (2011)).

2   **D.    THE COURT SHOULD DISMISS THIS ACTION OR, IN THE**
3         **ALTERNATIVE, STAY THIS ACTION**

4         Because Stover's claims are all subject to arbitration and Stover failed to bring

5   her claims in the contractually mandated arbitral forum, the Court should not just

6   grant the motion to compel arbitration but should exercise its discretion to dismiss

7   all the claims with prejudice, under Rules 12(b)(1) or 12(b)(3).  As the Ninth Circuit

8   has held, "a district court may either stay the action or dismiss it outright when, as

9   here, the court determines that all of the claims raised in the action are subject to

10  arbitration." *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir.

11  2014), citing *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988).

12  *See also Luna v. Kemira Specialty, Inc.*, 575 F. Supp. 2d 1166, 1176 (C.D. Cal. 2008)

13  ("[E]ven where a party moves to stay litigation pending arbitration under the [FAA],

14  the district court has discretion to dismiss the complaint if it finds all of the claims

15  before it are arbitrable").  Because the parties agreed to individually resolve any

16  disputes in an arbitral forum, and because Stover failed to bring her claims in that

17  forum, venue is improper and the Court lacks subject matter jurisdiction.  Stover's

18  claims should therefore be dismissed with prejudice under Rules 12(b)(1) and

19  12(b)(3) with directions that if Stover pursues her claims at all, she must do so in

20  individual, non-class arbitration, as she is contractually bound to do.  *See Argueta v.*

21  *Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996).

22        Even if the Court does not dismiss Stover's claims upon compelling arbitration

23  of them, it must at minimum stay this action pending completion of arbitration

24  proceedings.  Under 9 U.S.C. § 3, the court, in any action "referable to arbitration

25  under an agreement in writing . . . upon being satisfied that the issue involved in such

26  suit or proceeding is referable to arbitration under such an agreement, shall on

27  application of one of the parties stay the trial of the action until such arbitration has

28  been had in accordance with the terms of the agreement."  The stay provision is

mandatory.  9 U.S.C. § 3.

## IV.   <u>CONCLUSION</u>

Defendants EHI, EIS and CIC respectfully request that the Court grant this Motion to Compel Arbitration, and stay this case, pursuant to 9 U.S.C. § 3, pending compliance with the contractual arbitration agreement, or alternatively dismiss this case pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(3).


Dated:  August 24, 2018

*/s/ Richard J. Grabowski*
Richard J. Grabowski
Edward S. Chang
Jeremy S. Close
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, California  92612
(T) 949.851.3939
(F) 949.553.7539

Attorneys for Defendants Experian
Holdings, Inc.; Experian Information
Solutions, Inc.; and ConsumerInfo.com,
Inc.