JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

|  |  |
|---|---|
| RACHEL STOVER, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EXPERIAN HOLDINGS, INC., et al.,<br><br>Defendants. | Case No.: SACV 18-00826-CJC(DFMx)<br><br>**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR RECONSIDERATION, OR, IN THE ALTERNATIVE, TO CERTIFY APPEAL [Dkt. 34]** |

## I. INTRODUCTION

Plaintiff Rachel Stover brought this putative class action against Defendants Experian Holdings, Inc., Experian Information Solutions, Inc., and Consumerinfo.com, Inc., alleging that Defendant misled consumers by failing to clearly inform them how

Defendants calculated Experian Credit Scores. (Dkt. 1 [Complaint, hereinafter "Compl."].) On October 31, 2018, the Court granted Defendant's motion to compel arbitration and stayed the case. (Dkt. 32.) Now before the Court is Plaintiff's motion for reconsideration, or, in the alternative, to certify appeal on whether her claim is subject to arbitration. (Dkt. 34 [hereinafter "Mot."].) For the following reasons, the motion is **GRANTED IN PART**.[1]

## II. BACKGROUND

In this putative class action, Plaintiff asserts a variety of claims related to the allegedly misleading marketing of Experian Credit Scores. (Compl. ¶ 2.) Defendants purportedly encouraged consumers to purchase Experian Credit Scores to learn about their credit score and find out what factors may be affecting their credit. (*Id.* ¶ 3.) Experian Credit Scores, however, were not the credit scores used by the majority of lenders. (*Id.* ¶ 5.) Plaintiff asserts that Defendants misled and confused consumers by marketing the Experian Credit Scores and by offering a product that was "inferior, inaccurate and of little value to consumers." (*Id.*) She brings claims under the Fair Credit Reporting Act, California's Unfair Competition Law, and the Florida Deceptive and Unfair Trade Practices Act. (*Id.* ¶¶ 45–91.)

The instant dispute revolves around whether Plaintiff's claims are subject to arbitration. As discussed in the Court's October 31, 2018 order, the parties dispute what agreement applies and whether the applicable agreement carves out Plaintiff's claims from arbitration. The Court here repeats its summary of the relevant background.

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for February 11, 2019, at 1:30 p.m. is hereby vacated and off calendar.

On June 17, 2014, Plaintiff visited www.experian.com, where she accepted an offer from Defendant Consumerinfo.com ("CIC"). (Dkt. 26-2 [Declaration of David Williams, hereinafter "Williams Decl."] ¶ 16.) CIC is owned by Defendant Experian Holdings, Inc. and is an affiliated entity of Defendant Experian Information Solutions, Inc. (*Id.* ¶ 2.) Plaintiff paid $1 for an Experian credit report, a PLUS Score credit score, and a 7-day trial membership in an Experian credit monitoring product. (*Id.* ¶ 16.) At the time Plaintiff placed her order, she clicked a button that affirmed her consent to CIC's Terms and Conditions. (*Id.*) During Plaintiff's membership, the July 13, 2012 Terms of Use Agreement ("2012 Terms") were in place, which contained the following provision:

> CIC and you agree to arbitrate all disputes and claims between us, except any disputes or claims which under governing law are not subject to arbitration. This agreement to arbitrate is intended to be broadly interpreted and to make all disputes and claims between us subject to arbitration to the fullest extent permitted by law. . . .
>
> For purposes of this arbitration provision, references to "CIC," "you," and "us" shall include our respective parent entities, subsidiaries, affiliates, agents, employees, predecessors in interest, successors and assigns, websites of the foregoing, as well as all authorized or unauthorized users or beneficiaries of services, products or information under this or prior Agreements between us. Notwithstanding the foregoing, either party may bring an individual action in small claims court. You agree that, by entering into this Agreement, you and CIC are each waiving the right to a trial by jury or to participate in a class action. This Agreement evidences a transaction in interstate commerce, and thus the Federal Arbitration Act governs the interpretation and enforcement of this arbitration provision. This arbitration provision shall survive termination of this Agreement. . . .
>
> YOU AND CIC AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.

(Williams Decl. Ex. D.) The 2012 Terms further state that they "may be updated from time to time," and that "[e]ach time you order, access or use any of the Products, Product

Website, and/or Content, you signify your acceptance and agreement, without limitation or qualification, to be bound by the then current agreement." (*Id.*)

On May 10, 2018, Plaintiff accessed the website again. (Compl. ¶ 21.) In May 2018, Defendants no longer offered the products or membership that Plaintiff had purchased in 2014. (Williams Decl. ¶ 17.) Defendants offered FICO credit scores instead. (*Id.*) At that time, the May 10, 2018 Terms of Use Agreement ("2018 Terms") were in place. Unlike the 2012 Terms, however, the 2018 Terms contain a limited carve-out from arbitration:

> This agreement to arbitrate is intended to be broadly interpreted to make all disputes and claims between us directly relating to the provision of any Service and/or your use of any Website subject to arbitration to the fullest extent permitted by law. *However, for the avoidance of doubt, any dispute you may have with us arising out of or relating to the Fair Credit Reporting Act (FCRA) or other state or federal laws relating to the information contained in your consumer disclosure or report, including but not limited to claims for alleged inaccuracies in your credit report or the information in your credit file, shall not be governed by this agreement to arbitrate.* The agreement to arbitrate otherwise includes, but is not limited to:
>
> > claims arising out of or relating to any aspect of the relationship between us arising out of any Service or Website, whether based in contract, tort, statute . . . fraud, misrepresentation or any other legal theory; claims that arose before this or any other prior Agreement (including, but not limited to, claims relating to advertising); claims that are currently the subject of a purported class action litigation in which you are not a member of a certified class; and claims that may arise after the termination of this agreement. . . .
>
> YOU . . . AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR . . . INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING . . . .

(Dkt. 28-4 [Declaration of Melissa S. Weiner, hereinafter "Weiner Decl."] Ex. A [emphasis added]; *id.* Ex. C.)

After Plaintiff filed this action in federal court, Defendants moved to compel arbitration of her claims. In its October 31, 2018 order, the Court determined that the 2018 Terms governed because the 2012 Terms contained an explicit change-of-terms provision which Plaintiff had triggered by accessing the website on May 10, 2018. (Dkt. 32 at 6–7.) It further held that the 2018 Terms required arbitration of Plaintiff's claims. (*Id.* at 10–13.) The Court rejected Plaintiff's argument that the 2018 Terms carved out her FCRA claim and state law claims from arbitration. (*Id.* at 11–13.) The 2018 Terms do not require arbitration of "any dispute . . . arising out of or relating to the Fair Credit Reporting Act (FCRA) or other state or federal laws relating to the information contained in your consumer disclosure or report." (*Id.* at 10–11.) Plaintiff's claims do not fall under this carve-out because they do not "relat[e] to the information contained in [her] consumer disclosure or report." (*Id.* at 12.) Instead, Plaintiff's claims concern the allegedly misleading marketing of Experian Credit Scores, not the information used to calculate those scores. (*Id.* at 11–13.) Moreover, the FCRA distinguishes between credit scores and consumer disclosures or reports. (*Id.*) Since all of Plaintiff's claims are arbitrable, the Court stayed the case, pending resolution of arbitration. (*Id.* at 13.)

On November 28, 2018, Plaintiff moved for reconsideration of the Court's October 31, 2018 order. (Dkt. 34.) Plaintiff largely repeats her arguments from earlier briefing. She argues that the 2018 Terms carve out her claims from arbitration because the carve-out applies to all FCRA claims and the Experian Credit Score was or was related to a consumer report or a consumer disclosure. (*Id.* at 7–8.) Alternatively, she asks the Court to dismiss the case so that she can appeal. (*Id.* at 10–12.)

## III. ANALYSIS

Plaintiff moves for reconsideration under Federal Rule of Civil Procedure 60(b)(6). Under this rule, a district court "may relieve a party from a final judgment, order, or proceeding" for "any reason that justifies relief." Fed. R. Civ. P. 60(b)(6). An order is "final" if it terminates litigation and is subject to appeal. *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803, 816 (9th Cir. 2018) (citing *Corn v. Guam Coral Co.*, 318 F.2d 622, 628–29 (9th Cir. 1963)). The October 31, 2018 order did not terminate the instant litigation and is not subject to appeal. Relief pursuant to Rule 60(b) is not available to Plaintiff.

Alternatively, Plaintiff moves for reconsideration under Local Rule 7-18. Local Rule 7-18 provides for reconsideration under three grounds: (1) "a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision," (2) "the emergence of new material facts or a change of law occurring after the time of such decision," or (3) "a manifest showing of a failure to consider material facts presented to the Court before such decision." Under Local Rule 7-18, "[n]o motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion."

As a threshold issue, Plaintiff fails to establish grounds under Local Rule 7-18 to warrant reconsideration of the Court's decision that her claims are subject to arbitration. Plaintiff's motion for reconsideration simply rehashes arguments that she already made in her opposition to Defendants' motion to compel. (*Compare* Dkt. 28 [Pl.'s Opp'n to Mot. to Compel Arbitration] [arguing that carve-out applies to all FCRA claims in addition to claims contained in consumer disclosures and reports], *with* Mot. [making identical arguments].) Nevertheless, the Court will proceed to address Plaintiff's arguments.

### A. Arbitrability of Plaintiff's Claims

First, Plaintiff argues that the arbitration clause broadly carves out *any* claim relating to the FCRA. The 2018 Terms carve out from arbitration "any dispute . . . arising out of or relating to the Fair Credit Reporting Act (FCRA) or other state or federal laws relating to the information contained in your consumer disclosure or report." In its October 31, 2018 order, the Court concluded that the modifier "relating to the information contained in your consumer disclosure or report" applied equally to claims arising under the FCRA and other state or federal laws. Plaintiff argues that the modifier applies only to claims under other state or federal laws. Under this reading, Plaintiff argues that all FCRA claims fall under the arbitration clause's carve-out.

The Court disagrees. Plaintiff's reading is contrary to basic grammar rules and the text's plain reading. Plaintiff appears to read in a comma between "the Fair Credit Reporting Act (FCRA)" and "other state or federal laws." However, since there is no comma, the clauses are not independent, but connected. *See* The Chicago Manual of Style (15th ed. 2003) ¶ 6.32 ("When independent clauses are joined by *and*, *but*, *or*, *so*, *yet*, or any other conjunction, a comma usually precedes the conjunction."). When the phrase is read in conjunction with the rest of the punctuation on the page, including the two commas that precede and immediately follow the clause at issue, the modifier "relating to the information contained in your consumer disclosure or report" applies both to claims arising under the FCRA and to claims arising under other state and federal laws. *See* Cal. Civ. Code §1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.").

Plaintiff argues that the "last antecedent rule" supports her interpretation. The last antecedent rule provides that "qualifying words, phrases and clauses are to be applied to the words or phrases immediately preceding and are not to be construed as extending to

or including others more remote." *People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.*, 107 Cal. App. 4th 516, 529 (2003) (quoting *Renee J. v. Superior Court*, 26 Cal. 4th 735, 743 (2001)). But this canon of construction is not used "when several words are followed by a clause that applies as much to the first and other words as to the last." *Lockyer*, 107 Cal. App. 4th at 530; *see also Porto Rico Ry., Light & Power Co. v. Mor*, 253 U.S. 345, 348 (1920). Here, the modifier "relating to the information contained in your consumer disclosure or report" logically applies to all three antecedents. In such circumstances, courts apply the "series-qualifier canon" to understand the sentence's meaning. *See* A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 147 (2012) ("When there is a straightforward, parallel construction that involves all nouns or verbs in a series," a modifier at the end of the list "normally applies to the entire series.") Accordingly, the arbitration clause does not carve out all FCRA claims from arbitration, but rather FCRA claims that relate to the information contained in the user's consumer disclosure or report.

Second, Plaintiff argues that Experian Credit Scores relate to the information contained in her consumer disclosure and report. The FCRA defines a "consumer report" as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness . . . which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for" credit, insurance, employment, or any other authorized purpose. 15 U.S.C. §1681a(d)(1). Plaintiff argues the Experian Credit Score is a "consumer report" under the definition provided in 15 U.S.C. §1681a(d) because it is "a communication of information bearing on a consumer's 'credit worthiness,' and which is 'expected to be used' as one factor in determining the consumer's eligibility for credit." (Mot. at 7–8.) However, in order for information to qualify as a "consumer report," the information must be provided to a third party. *See Harrington v. ChoicePoint Inc.*, 2005 WL 7979032, at *3 (C.D. Cal. Sept. 15, 2005). Plaintiff never alleges that Defendants

provided the Experian Credit Scores to a third party.  She, in fact, alleges the opposite—that Defendants' marketing was misleading because Experian Credit Scores were *not* used by lenders and were *not* used to determine a consumer's eligibility for credit. (Compl. ¶ 14.)

Plaintiff further argues the Experian Credit Score is a "consumer disclosure." Section 1681g of the FRCA, which is titled "Disclosures to consumers," requires that the credit reporting agency, upon request, "clearly and accurately disclose to the consumer . . . [a]ll information in the consumer's file at the time of the request," except that the credit reporting agency does not have "to disclose to a consumer any information concerning credit scores or any other risk scores or predictors relating to the consumer." 15 U.S.C. §1681g(a).  Plaintiff argues that although a credit score is not a required component of consumer disclosures, credit scores become a consumer disclosure when the credit reporting agency provides a credit score. (Mot. at 9.)  She also argues, for the first time, that because section 1681g also defines credit scores and requires credit scores to be accurate, credit scores relate to consumer disclosures. (*Id.* at 9–10.)  She further appears to refashion her FCRA claim as based on the "accuracy" of her credit score. (*Id.* at 9.)

To the extent Plaintiff now raises a new argument about the structure of the FCRA, this alone is a reason to deny Plaintiff's motion for reconsideration. *See Salinas v. Pac. Castle Newport I, LLC*, 2017 WL 7512879, at *2 (C.D. Cal. Jan. 4, 2017) (denying motion for reconsideration where party simply thought of additional reasons to support its original motion).  And in any case, the Court remains unconvinced.  The FCRA's definition of consumer disclosures explicitly omits credit scores.  *See* 15 U.S.C. §168g(a)(1)(B).  The fact that the same section of the United States Code also defines credit scores does not mean that consumer disclosures relate to credit scores.  Plaintiff's attempt to characterize her claim as based on the "accuracy" of her score, and therefore

connect her claim to the information in her consumer file, is likewise unpersuasive. In the complaint, Plaintiff accuses Defendants of violating the FCRA by supplying her with credit scores that are not derived from a credit scoring model that is widely used by lenders and scores that did not assist her in understanding the credit scoring assessment of her credit behavior. (Compl. ¶ 14.) Plaintiff does not allege that the underlying information used to calculate her credit score—in other words, the information in her consumer file that would be included in a consumer disclosure—is inaccurate. Rather, she challenges the model that Defendants used to generate Experian Credit Scores and the way that Defendants marketed those scores. Plaintiffs' claims are not related to consumer disclosures. Accordingly, her claims are subject to arbitration.

### B. Dismissal of Case

In addition, Plaintiff asks the Court to reconsider its decision to stay the case pending arbitration. In their motion to compel arbitration, Defendants asked the Court to dismiss Plaintiff's claims or stay the case. (Dkt. 26 at 14.) In her opposition, Plaintiff did not address whether the Court should stay or dismiss the case. (*See generally* Dkt. 28.) She now argues that the Court did not consider her lack of opposition to Defendants' request for a dismissal in deciding to stay the case. (Mot. at 10–12.) Plaintiff argues that the interests of justice weigh heavily in favor of dismissal of the case because it will enable appellate review of the Court's construction of the carve-out provision.

In its discretion, the Court will dismiss the case. The Court had interpreted Plaintiff's silence on the issue to mean that Plaintiff preferred the Federal Arbitration Act's default of a stay. Indeed, the Ninth Circuit has expressed a preference for staying an action pending arbitration rather than dismissing it. *MediVas, LLC v. Marubeni Corp.*, 741 F.3d 4, 9 (9th Cir. 2014). At the same time, it has recognized "that the pro-

arbitration policies undergirding this preference are not served by a stay when the practical realities of arbitration and litigation suggest either that no arbitration will actually take place or that the arbitration will be so different in character so as to make staying the original action useless." *Id.* at 9 n.4.  Plaintiff's motion for reconsideration now clarifies that she seeks dismissal because the absent class members are unlikely to ever adjudicate their claims and the practical realities of arbitration and litigation favor final adjudication on the arbitration issue before a single individual claim with low monetary value is arbitrated.  (Mot. at 11–12.)  Since dismissal would better serve the interests of justice, Plaintiff's claims are **DISMISSED**.[2]

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's motion for reconsideration is **GRANTED IN PART**.  The Court still finds that Plaintiff's claims are subject to arbitration.  However, in the interest of justice and due to the practical realities of arbitration and litigation, Plaintiff's claims are **DISMISSED**.

DATED:    January 30, 2019

_____
CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE

---

[2] Since the Court dismisses the case, it need not reach Plaintiff's request that the Court certify an appeal pursuant to 28 U.S.C. §1292(b).